## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
..................................................................
UNITED STATES OF AMERICA,            :      CASE NO. 1:21-CR-208 (APM)
                                     :
              Plaintiff,             :
                                     :
       v.                            :      DEFENDANT'S REPLY
                                     :
                                     :
THOMAS WEBSTER,                      :
                                     :
              Defendant.             :
..................................................................
```

Defendant Thomas Webster (hereinafter "Webster"), by and through his attorneys, Dupee

& Monroe, P.C., replies to the Government's opposition to defendant's Motion to Revoke or Amend

the Order of Pre-Trial Detention dated February 23, 2021 and in support thereof, states as follows:

1.      The Government loosely employs the terms riot[1] and insurrection[2] broadly to describe

the conduct of all the Americans present at the U.S. Capitol on January 6th. [3] Whether these terms are

---

[1]A riot is defined as:

    1.      An assemblage of three or more persons in a public place taking concerted
    action in a turbulent and disorderly manner for a common purpose (regardless
    of the lawfulness of that purpose).

    2.      An unlawful disturbance of the peace by an assemblage of [usually] three or
    more persons acting with a common purpose in a violent or tumultuous manner
    that threatens or terrorizes the public or an institution. (*Black's Law Dictionary
    11th ed. 2019)*

[2] Insurrection is defined as :

    [A]n act or instance of revolting against civil authority or an established
    Government (*Black's Law Dictionary 11th ed. 2019)*

[3]*See also,* Devine, M. (2021, June 28th). New York attorney brave devil's advocate. New York
Post, Pg. 9-10.

used by the Government to achieve a prosecutorial or political objective, the true meaning of these terms are critical in assessing the dangerousness (i.e. 18 U.S.C. §3142(g)) of a pre-trial detainee.

2.      Of the thousands of Americans who descended upon the U.S. Capitol on January 6[th,] defendant's Exhibit "H" evidences that not all of these individuals assembled for the common purpose of engaging in violence. Nor, did the majority of the American Citizens depicted by this video have any intentions to revolt against civil authority or dislodge the United States Government. For those individuals present at the Capitol with the purpose of attacking members of law enforcement or to staging a revolt, defendant emphatically embraces Judge Royce Lamberth's description of January 6th as a "disgrace" (*see, June 23, 2021 sentencing, U.S. v. Morgan - Lloyd,* 21-CR-164) (D.D.C.) and condemns in the strongest terms the acts of violence perpetrated.

3.      Unlike the pre-trial detainees examined by the Courts in *U.S. v. Fairlamb*, 1:21-cr-120-RCL (D.D.C. Apr. 26, 2021); *U.S. v. Sabol,* 2021 WL 1405945 at *11 (D.D.C. ); or *U.S. v. Foy,* 21-cr-108 (D.D.C.), Webster was a protestor[4] who arrived late along the westside of the Capitol with his Marine Corps flag. Fortunately, Officer N.R. did not sustain an injury as a result of his encounter with Webster. Defendant's physical response to Officer N.R. was not prompted by the political climate of January 6th. Officer N.R's body cam video, viewed in its entirety (Exhibit "H"), evidences that Officer N.R. does not exhibit the same level of restraint followed by his fellow officers under what were extraordinarily difficult circumstances for these members of law enforcement. Rather than engage in conduct which would have deescalate tensions between the protestors and police, Officer N.R. is seen violently throwing a woman down to the ground on two separate occasions (Exhibit "H"

---

[4]The term protest is defined as:

> A formal statement or action expressing dissent or disapproval *Black's Law Dictionary (11[th] ed. 2019)*

at 14:18:08 and 14:18:22); reaching over the barrier to push a blinded protestor (Exhibit "H" at 14:20:45 - 14:23:06); and using obscene gestures to mock a civilian's complaints concerning Officer N.R's use of force. (Exhibit "H" at 14:23:06)  None of the outwardly aggressive behavior displayed by Officer N.R. was shared by the other officers assigned to this police line. Beyond protestors like Webster, the vast majority of individuals within the purview of Officer N.R's body cam video (Exhibit "H"), can best described as bystanders casually observing events unfolding. Noticeably absent from the Government's video are any verbal commands issued by the individual officers or the use of a public address system directing the crowd to disperse. Defendant regretfully charged Officer N.R. in response to being pushed (Exhibit "H" at 14:28:27) and punched (Exhibit "H" at 14:28:28) in the face by this Officer. *See, also* Exhibit "P"

4.      Defendant is not accused of using a conventional weapon like a, gun, knife, taser, axe handle or chemical spray which would raise a much greater risk of dangerousness than the bottom half of defendant's hollow aluminum flagpole weighing .425 pounds or 6.8 ounces.[5]  (*e.g.* Exhibit "G")  Out of an abundance of caution, defendant left his service revolver in his hotel room.  A copy of defendant's "unrestricted" pistol permit issued to him on June 17, 2012 is attached as Defendant's

---

[5]The Government's basis for applying §111(b) enhancement is defendant's use of the bottom portion of his aluminum flagpole as a "deadly or dangerous weapon".  The relevant statute does not include a definition for "deadly or dangerous weapon and the Government does not provide one.  Defendant contends that his flagpole does not constitute a "deadly or dangerous weapon."  The definition of "deadly or dangerous weapon" used by multiple Circuit Courts for the purpose of §111 is an object either "inherently deadly [or] . . . .used in a way that is likely to endanger life or inflict great bodily harm." *United States v. Chansley*, 2021 WL 861079 (D.D.C. March 8, 2021)

Given the grave penological distinction between a violation of 18 U.S.C. §111(a)(1) as opposed to §111(b) - potentially eight years as opposed to twenty years of imprisonment - principles of due process are implicated.  The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law." *U.S. Const. amend V.* "Stemming from this guarantee is the concept that vague statutes are void*." United States v. Cook,* 782 F3d 983, 987 (8ᵗʰ Cir. 2015) "[T]he void - for - vagueness doctrine requires that a Penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357 (1983).  It "guarantees that ordinary people have inside 'fair notice' of the conduct a statute prescribes." *Sessions v. Dimaya,* 138 S. Ct. 1204, 1212 (2018) Based upon the manner in which the Government intends to apply 18 U.S.C. §111(b) to defendant's conduct, this statute is void for vagueness.

Exhibit "Q". Obviously, had defendant possessed any true intentions to perpetrate a riot or insurrection he would have at least been properly armed with a weapon as opposed to a Marine Corps flag attached to a five foot aluminum pole. Assaultive conduct, particularly involving multiple incidents of provocation towards police combined with verbal threats before, during or continuing after January 6th, are the types of indicia of dangerousness that may warrant pre-trial detention. *See, e.g., U.S. v. Padilla,* 2021 WL 1751054 (D.D.C. May 4, 2021); *U.S. v. Fairlamb*, 2021 WL 161482 (D.D.C. April 26, 2021) By contrast, the evidence presented shows that beyond Webster's fifteen second encounter with Officer N.R., he engaged in no further acts of violence or threats on January 6th. The Government's evidence simply falls short of what is necessary to demonstrate that Webster poses the kind of dangerousness requiring his continued detention. *See, U.S. v. Owens,* 2021 WL 2188144 at \*12 (D.D.C. May 28, 2021); *U.S. v. Taylor,* 2021 WL 2439231 at \*1-2 (D.D.C. June 15, 2021)

5.      Of recent note, the U.S. Circuit Court's ruling in *U.S. v. Munchel*, 991 F.3d 1273 (D.C. Cir.2021) reaffirmed that "to order a defendant preventatively detained, a Court must identify an articulable threat posed by the defendant to an individual or the community." *Munchel*, 991 F3d at 1283. Applying that rule, the D.C. Circuit Court vacated the District Court's findings and released the defendant on bond based on the following facts:

>    1.      The defendants engaged in planning for, and preparing for, the riot on January 6, 2021, as reflected by their wearing tactical vests and carrying a backpack with "weapons," which they "stowed" outside the Capitol building when they entered the building;
>
>    2.      One defendant wore a taser that he brought with him to the District, "holstered on his hip" inside the Capitol building;
>
>    3.      Defendants accompanied the crowd inside the Capitol building to help "shut down" Congress, despite knowing tear gas had been used to keep them out;

4.      Defendants cheered and encouraged members of the crowd to push forward into the Capitol building;

5.      Defendants picked up "plastic handcuffs known as 'zip ties'" inside the Capitol building to carry with them along with the taser, as they chanted "treason! treason!";

6.      Defendants breached so deeply inside the Capitol building that defendants entered the gallery inside the U.S. Senate chamber and one defendant discussed stealing the gavel on the Senate Dais; and

7.      Defendants expressed to media outlets after the Capitol assault their willingness to "rise up, band together and fight if necessary," for their political views.

6.      If these facts are insufficient to support the defendant's detention in *Munchel*, then the facts at bar are equally insufficient to warrant detention in Webster's case. Webster's brief physical encounter (*i.e.* 15 seconds) with Officer N.R. standing alone would also be an insufficient basis for defendant's preventative detainment. *See, e.g., U.S. v. Klein*, 2021 WL 1377128 (D.D.C. April 12, 2021) at *8-9 (defendant engaged in "hand-to-hand combat" "for approximately thirty (30) minutes"); *U.S. v. Leffingwell*, 21-cr-5 (D.D.C.) (defendant repeatedly punched Officer with a closed fist).

7.      As to the Government's position concerning Webster's *de facto* leadership, the attached videos (Exhibits "H", "J" & "K") do not show other protestors rallying around Webster, following his physical movements, or listening to his verbal pronouncements.  In this context, such statements together with defendant's alleged conduct - - though reprehensible - - hardly establishes that defendant was a *de facto* leader of the protestors gathered along the west terrace of the U.S. Capitol building. *See, U.S. v. DeGrave*, 2021 WL 1940536 at *13 (D.D.C.) *citing, U.S. v. Klein*, 2021 WL 1377128 at *8 (D.D.C.) (holding that encouraging other rioters by shouting "we need fresh people" did not make the defendant a *de facto* leader in the Capitol insurrection).

8.      Despite the factual disputes recited, Webster and the Government share some common ground. Namely, defendant does not pose a flight risk. *See, Government's Opposition at page "19".* Defendant did not hit Officer N.R. with the flagpole. *Government's Opposition at page "25".* Defendant was not motivated by political sentiment but by the misconduct perpetrated by Officer N.R. Due to defendant's unfamiliarity with the Washington D.C. area, he downloaded a tourist map (Government's figure 1) to help find his way from his hotel to the rallies held on January 5th and 6th. The Government's photo marked "figure 2" depicts defendant's "alice (i.e., all-purpose lightweight individual carry equipment) pack" that defendant has owned since his discharge from the United States Marine Corps on October 31, 1989. (Exhibit "B")  The "alice pack" (Government's figure 2) was used to carry defendant's protective vest from New York to Washington, D.C.

9.      As denoted in the Government's figure "3", defendant traveled to Washington, D.C. with the understanding that most of the restaurants/stores were closed due to COVID-19 restrictions. To assure himself of food and to minimize his contacts with others, defendant traveled with MREs. As depicted in Government's figure "4", Webster left his MREs and "alice pack" behind in his hotel room. Notwithstanding the Government's contentions to the contrary, none of the information/photographs retrieved from defendant's cell phone evidence criminal behavior. Looking at the entirety of Webster's years of exemplary devotion to his family and country, not to mention his spotless record with the United States Marine Corps and N.Y.P.D.[6], makes it abundantly clear that his censurable  encounter with Officer N.R. lacks adequate justification for defendant's  pre-trial detention.

---

[6]Defense counsel at paragraph "7", second sentence, would like to point out the following typographical error:

> "Only one [un]substantiated complaint for excessive force was filed against defendant during his twenty years of service."

## SIXTH AMENDMENT &
## 18 U.S.C. § 3142(i)(3)

10.     Lastly, the Sixth Amendment of the United States Constitution commands that "[i]n all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[The assistance of counsel] is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty…The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'" *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963)(citing *Johnson v. Zerbst*, 304 U.S. 458, 462 (1938)). "The reason pretrial detainees need access to the courts and counsel is not to present claims to the courts, but to defend against the charges brought against them." *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)(citing *Murray v. Giarratano*, 492 U.S. 1, 7 (1989)).

11.     Defendant has not had adequate access to counsel since his detainment. Webster was initially in the custody of the U.S. Marshals in Westchester County, New York when defendant was remanded. For a brief period, defendant was held at Orange County Jail in Goshen, New York, in the same town as his counsel's office and where counsel could, and did, readily and easily meet with defendant.

12.     However, with no explanation, defendant was uprooted from Orange County Jail in the middle of one night and sent to the Cimarron Facility in Cushing, Oklahoma - - approximately 1,411 miles from counsel's office. During defendant's time in this facility, defendant had zero contact with counsel despite your writer's repeated attempts to do so through both CoreCivic (who oversees the operations of the Cimarron facility) and the U.S. Marshals' Office. No explanation for why defendant was transferred from Goshen, New York to Cushing, Oklahoma was ever proffered to counsel. Due to past/current COVID-19 restrictions, Webster's court appearances have occurred

remotely, rendering the government's need to confine defendant outside of the Orange County Correctional Facility meaningless and perhaps punitive.

13.     Defendant was transferred subsequently to Northern Neck Regional Jail in Warsaw, Virginia - - approximately 361 miles from counsel's office. While defendant was held in this facility, his access to counsel was limited solely to brief video visitation, and defendant had no ability to review the product of counsel's research or the most important aspect of the government's evidence against him - - the video/photographic footage of defendant.

14.     Finally, defendant was transferred to the D.C. Central Detention Facility in Washington, D.C., where he has remained confined to a cell twenty-three hours per day up until ten days ago. On May 7, 2021, your writer and his law partner, Mr. Jon C. Dupee, Jr., personally went to the D.C. Central Detention Facility to meet with defendant and to provide him with papers that had been filed in these proceedings. Counsel was inexplicably and summarily dismissed from the facility, and no meeting took place on that date. Further, your writer was told that no papers could be left that would be provided to defendant. Multiple e-mails sent by Mr. Dupee to the Facility's administrative staff on May 7th went unresponded to.

15.     In connection with the instant motion, counsel wrote a letter to the defendant and to the D.C. Central Detention Facility's Warden Brenda Shell on June 22, 2021 (Exhibit "R") attempting to provide to defendant our instant motion and thumb drive containing defendant's exhibits. Exhibits "H," "J," & "K" Our office was advised by the defendant that the thumb drive containing these video exhibits was confiscated by jail officials. Defendant was not afforded any equipment/opportunity to review this evidence. This is but another example of how defendant's Sixth Amendment rights to counsel and to meaningfully participate in his own defense are curtailed by defendant's continued detention.

16.     As shown above, the limited communication between defendant and counsel not only violates defendant's Sixth Amendment rights, but also violates the provisions of 18 U.S.C. § 3142(i)(3), which commands that any defendant subject to a detention order "be afforded reasonable opportunity for private consultation with counsel."

17.     Without the ability to participate in his own defense and to have effective assistance of counsel, due solely to the continued obfuscation of these incontrovertible rights on the part of the federal prison system, justice cannot "still be done." *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963)(citing *Johnson v. Zerbst*, 304 U.S. 458, 462 (1938)). Such a blatant violation of defendant's Sixth Amendment rights should not be allowed to persist by virtue of his pretrial incarceration.

## CONCLUSION

WHEREFORE, counsel requests that this Honorable Court release Mr. Webster subject to the conditions recommended by Pre-Trial Services together with any additional pretrial release conditions the Court believes necessary to satisfy the statutory criteria found in 18 U.S.C. §3142(g).

Dated:     Goshen, New York
           June 28, 2021

Respectfully submitted,

JAMES E. MONROE, ESQ.
Dupee & Monroe, P.C.
211 Main Street, P.O. Box 470
Goshen, New York 10924
Telephone: 845-294-8900
Fax 845-294-3619
Email: info@dupeemonroelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day, June 28, 2021 a copy of the foregoing was served on all

parties via ECF.

JAMES E. MONROE, ESQ.