UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 21-cr-208 (APM) |
| Plaintiff, | ) | |
| | ) | **REPLY** |
| v. | ) | |
| | ) | |
| THOMAS WEBSTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Having received the Government's opposition to Webster's motion to change venue, defendant offers this brief reply. Defendant concedes as argued by the Government that a particularly high burden must be met in support of a change of venue. *See, generally, Skilling v. United States,* 561 U.S. 358, 378(2010). Of the three pre-*voir dire* factors spelled out in *Skilling,* no individual criteria is determinative in the Court's assessment. On this score, defendant urges that the facts raise serious concerns as to whether Webster - - or any of the other approximately 775 January 6th defendants - - can expect to receive a fair trial from a D.C. jury pool comprised of mainly individuals who view themselves as victims of defendants' crime(s). The extraordinary impact that the January 6th protests had on District of Columbia residents is aptly illustrated by this Court's recent decision in *Thompson v. Trump* (Case No. 21-CV-00400) (APM) where - - for the first time in recorded history - - a former United States President was held potentially liable for damage(s) for conduct committed while in office.

Defendant points to the recent civil action brought by the D.C. Attorney General on behalf of the District of Columbia against a collection of ultra-right wing organizations/individuals as proof that even the District's leadership share the view that the

residents of D.C. were victims of January 6th and are entitled to financial compensation.[1] Two months ago the D.C. Attorney General gave a public address comparing the events of January 6th to the September 11th attack on the World Trade Center and Pentagon. *Id*. The Attorney General publically described the officers present on January 6th and the district residents as "victims" of the crimes perpetrated by individuals such as Webster. Parsing the jury pools' malevolence for the January 6th defendants generally from their potential feelings of contempt specifically for individuals like Webster is a constitutional challenge currently being tackled in *U.S. v. Reffitt* (21-cr-00032)(DLF). As aptly stated by Judge Friedrich in *Reffitt* during jury selection, no juror is coming to the case with a "clean slate" given the widespread media coverage associated with this event.[2]

Here, Webster will produce video evidence of being punched in the face[3] - - information not initially disclosed by Officer N.R. or the government - - which precipitated the events leading to Webster's arrest. An openly hostile jury pool who see themselves as the "victims" of alleged crimes committed by Webster are incapable of considering the evidence - - not to mention defendant's affirmative defenses - - with an open mind. Nor was every January 6th defendant punched in the face by a Capitol Police Officer without justification, accused of damaging public property or responsible for entering the U.S. Capitol Building. Unfortunately, a jury pool personally stung by the events of January 6th will - - at least for Constitutional purposes - - be incapable of separating their personal experiences associated with this event from the

---

[1] *See*, https://youtu.be/hvm9XSvLryQ
[2] https://www.businessinsider.com/qanon-shaman-potential-jurors-first-january-6-trial-guy-reffitt-2022-2
[3] *See,* https://youtu.be/VmJRqUYjlY4 at:23/1:32

evidence presented at trial. As such, a carefully orchestrated jury selection process will not result in the empanelment of twelve fair and partial jurors in the District of Columbia.

Dated: Goshen, New York
      March 1, 2022

_____
JAMES E. MONROE, ESQ.