**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES OF AMERICA,**

        **v.**                                  **Case No.:  21-cr-208-APM**

**THOMAS WEBSTER,**

                  **Defendant.**

---

**MOTION *IN LIMINE* TO PRECLUDE CLAIMS OF SELF-DEFENSE,
NECESSITY, JUSTIFICATION, AND DURESS,
AND TO EXCLUDE EVIDENCE IN SUPPORT THEREOF**

---

The United States of America respectfully files this motion *in limine* to preclude the defendant, Thomas Webster, from raising the affirmative defenses of self-defense, necessity, justification, and duress at trial.  As illustrated by video recordings of Webster's assault, the facts, as a matter of law, do not support a claim of self-defense because Webster was the initial aggressor and responded with greater force than necessary for any alleged self-protection.  The facts further do not support a claim of necessity, justification, or duress, as a matter of law, because Webster had a reasonable, legal alternative both to violating the law and to avoid the threatened harm.  In the alternative, the government requests that the Court direct Webster to provide a pre-trial proffer of facts to allow the parties to argue, and the Court to decide, whether he is entitled to assert any of these defenses.  If the Court defers its ruling until trial, the United States respectfully moves this Court to preclude Webster from raising any affirmative defenses in his opening statement and cross-examinations until the Court decides the present motion.

## **BACKGROUND**

In Count One of the Indictment, Webster is charged with one count of assaulting, resisting, or impeding a federal officer using a deadly and dangerous weapon, namely, a metal flagpole, in violation of 18 U.S.C. § 111(a)(1) and (b).  ECF No. 39.

On January 6, 2021, at 2:28 p.m., Webster initiated a physical altercation with Metropolitan Police Department Officer N.R. on the Lower West Terrace of the U.S. Capitol. Officer N.R.'s body-worn camera recorded Webster as he emerged from the crowd and approached the line of metal barricades where Officer N.R. stood.  *See* Exh. 204.[1]  Webster, who carried a metal flagpole in his right hand, pointed his finger in Officer N.R.'s face and shouted: "You f***ing piece of s**t.  You f***ing commie, motherf***ers, man.  You wanna attack Americans? No, f*** that."  As this occurred, Officer N.R. repeatedly tried to swat Webster's hand away.

Seconds later, Webster switched the flagpole to his left hand, shouted, "A f***ing Marine? You f***ing commie f***," and appeared to touch or push Officer N.R.'s hand.  Officer N.R. then used his open hand to push Webster away from the barricade.[2]  Webster continued shouting, "Come on, take your s*** off! Take your s*** off, you communist motherf***ers."  He then pushed the metal barricade into Officer N.R.  Officer N.R. responded by pushing Webster away, with his open hand contacting Webster's face.  In response, Webster struck his metal flagpole at the barricade in front of Officer N.R., causing it to break in half.  Webster used the remaining half of the flagpole to again strike the barricade, narrowly missing Officer N.R.

---

[1] Exhibit 204, a 56-second clip from Officer N.R.'s body-worn camera from January 6, 2021, is being provided to the Court and defense counsel via USAfx.

[2] The government expects that Webster's claim of self-defense will not be based on this push, but on Officer N.R.'s subsequent contact with Webster's face.  *See* ECF No. 54, at 2 (claiming that an alleged "punch[ ] in the face . . . precipitated the events leading to Webster's arrest").

Officer N.R. repositioned himself, at which point Webster lunged toward Officer N.R. with the flagpole.  Officer N.R. wrested the flagpole away from Webster's grip before falling backward to the ground.  Officer N.R. stood up and retreated several yards.  Webster, visibly enraged, then charged at and tackled Officer N.R. to the ground.  Webster and Officer N.R. wrestled before another rioter came to Officer N.R.'s rescue.

Below is a chronological series of still shots from Officer N.R.'s body-worn-camera footage, which the government provided to Webster in discovery.  *See* Exh. 204.  The date and time stamp can be seen in the upper right corner of each still shot.



*Figure 1: Webster approaches the line of metal bike rack barricades where Officer N.R. is standing, shouts profanities, and points his finger in Officer N.R.'s face.*



*Figure 2: Officer N.R. uses an open hand to swat Webster's left hand away.*



*Figure 3: Webster's right hand appears to make contact with Officer N.R.'s left hand.*



*Figure 4: Officer N.R. uses an open hand to push Webster away from the metal barricade.*



*Figure 5: Webster pushes the metal barricade into Officer N.R.*



*Figure 6: Officer N.R. pushes Webster away, with his open hand contacting Webster's face.*



*Figure 7: Webster strikes his metal flagpole at the barricade in front of Officer N.R., causing it to break in half.*



*Figure 8: Webster uses the remaining half of the flagpole to again strike the barricade, narrowly missing Officer N.R.*



*Figure 9: After Officer N.R. repositions himself, Webster lunges toward him with the flagpole.  Officer N.R. wrests the flagpole away from Webster's grip before falling backward to the ground.*



*Figure 10: After Officer N.R. retreats, Webster, visibly enraged, charges at and tackles Officer N.R. to the ground.*



*Figure 11: Webster charges toward Officer N.R. before tackling him to the ground.*



*Figure 12: Webster wrestles with Officer N.R. on the ground.*

## ARGUMENT

A pretrial ruling on the availability of Webster's proposed affirmative defenses is appropriate here. "If . . . an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it, even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." *United States v. Bailey*, 444 U.S. 394, 416 (1980); *see also United States v. Lebreault-Feliz*, 807 F.3d 1, 4 (1st Cir. 2015) ("[W]hen the proffer in support of an anticipated affirmative defense is insufficient as a matter of law to create a triable issue, a district court may preclude the presentation of that defense entirely." (citation omitted)); *United States v. Portillo-Vega*, 478 F.3d 1194, 1197-98 (10th Cir. 2007) ("A defendant must carry his burden on each of the elements [of the affirmative defense]; if the evidence is insufficient on even one element, the trial court and jury need not be burdened with testimony supporting other elements of the defense." (internal quotation marks omitted)). "[W]here the evidence proffered in response to the motion in limine is insufficient as a matter of law to support the affirmative defense a pre-trial ruling precluding the presentation of the defense at trial is appropriate." *United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002).

## I.    Webster Cannot, as a Matter of Law, Assert Self Defense.

Section 111 makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a federal officer in the performance of the officer's duties. 18 U.S.C. § 111(a)(1). To raise a valid claim of self-defense to a charge of assault under Section 111, the defendant must show (1) that he reasonably believed the use of force was necessary to defend himself or another against an immediate use of excessive force by a federal law enforcement officer; and (2) he used no more force than appeared reasonably necessary in the circumstances. *United States v. Urena*, 659 F.3d 903, 906-07 (9th Cir. 2011) (quoting *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006)); *United States v. Span*, 970 F.2d 573, 576-77 (9th Cir. 1992);

*United States v. Weekes*, 517 F. App'x 508, 510-11 (6th Cir. 2013); *United States v. Middleton,* 690 F.2d 820, 826 (11th Cir. 1982) ("[S]elf-defense is a defense which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger."). *See generally United States v. Waldman*, 835 F.3d 751, 754 n.1 (7th Cir. 2016) (collecting cases).

Apart from these prerequisites, "a defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018).  That principle applies fully to Section 111 prosecutions.  *See, e.g.*, *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) ("[A]n individual who is the attacker cannot make out a claim of self-defense as a justification for an assault."); *Urena,* F.3d at 907 (an individual who is the attacker cannot make out a claim of self-defense as a justification for an assault)*; Weekes*, 517 F. App'x at 510–11 (same).

Thus, Webster would be entitled to a jury instruction on self-defense only if he could establish each of the following: (1) he was not the initial aggressor; (2) he reasonably believed that his use of force was necessary to defend against Officer N.R.'s immediate use of excessive force; and (3) he responded with no more force than reasonably necessary under the circumstances.  As video footage shows, Webster fails each of these conditions.

A.    Webster Cannot, as the Initial Aggressor, Assert Self-Defense.

The video evidence demonstrates that Webster was the initial aggressor.  He emerged from the crowd, immediately shouted profanities at Officer N.R., and jabbed a finger in Officer N.R.'s face.  Webster then forcefully pushed the metal barricade into Officer N.R.'s body.  At

this point, Officer N.R. responded by pushing Webster away.  In so doing, Officer N.R.'s open hand contacted the side of Webster's face.

As this sequence shows, Webster provoked the conflict with Officer N.R., who was defensively positioned behind the barricade line and preventing the mob of rioters from further approaching the Capitol building.  As the instigator, Webster cannot, as a matter of law, defeat the Section 111 charge by asserting self-defense.

B.    Webster's Use of Force Was Objectively Unreasonable.

The law precludes Webster from asserting self-defense for a second reason: no objectively reasonable person in Webster's position would have believed that Officer N.R responded with excessive force.  *See United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012).

The video evidence shows that Webster illegally entered a restricted area of the U.S. Capitol and attempted to disrupt a law-enforcement barricade designed to prevent rioters from further approaching the U.S. Capitol building.  At this point, law enforcement had probable cause to arrest Webster for violations of federal criminal law.  *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.").

Officer N.R. responded to Webster's conduct with a reasonable display of force.  *See United States v. Drapeau*, 644 F.3d 646, 653-654 (8th Cir. 2011) (defining excessive force as "force that was unreasonable or unnecessary under the circumstances, *i.e.*, greater than the amount of force that was objectively reasonable").  The video evidence shows that Officer N.R. pushed Webster with an open hand to create distance between himself and Webster.  Officer N.R. later used an open hand to shield himself from Webster's flagpole.  At no point did Officer N.R. threaten Webster with lethal force or a lethal weapon.

11

Given that Officer N.R. had the right to physically detain and arrest Webster at this moment, his conduct in pushing Webster back from the police barricade reflected a "reasonable[] [display] of force based on the facts and circumstances." *Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011) (internal quotation marks, brackets, and citation omitted)  Webster had just approached Officer N.R., shouted expletives at him, and raised his finger.  Officer N.R. also lacked knowledge as to whether Webster was armed with a weapon or otherwise intended to harm the line of officers.  His decision to push Webster back from the barricade reflected a reasonable use of force under the circumstances.

Defense counsel has advised the government that he may adduce expert testimony that Officer N.R.'s defensive actions toward Webster violated police procedures or standards.  But such testimony would not "assist the trier of fact to understand the evidence or to determine a fact in issue" for a self-defense claim—whether Webster reasonably believed that Officer N.R. had used excessive force against him.[3]  Fed. R. Evid. 702.  As the Eleventh Circuit has observed, "the evidence relevant to [a defendant's] self-defense claim was *his perception* of the officers' actions that morning, not whether the officers followed proper procedure." *United States v. Wilk*, 572 F.3d 1229, 1235 (11th Cir. 2009) (emphasis added); *see also United States v. Swint*, 2012 WL 3962704, at *2 (D. Ariz. Sept. 11, 2012) ("[Expert's] opinion that the officers' actions constituted excessive force is not relevant because the issue in Defendant's self defense claim is the reasonableness of his belief that his use of force was necessary, not whether the officers acted unreasonably or contrary to proper training and procedures.").  An expert cannot opine on the question whether Webster's perceptions of Officer N.R's conduct met the self-defense standard. *See* Fed. R. Evid.

---

[3] The government does not believe that expert testimony on police protocols would be relevant to any disputed issue at trial.  If defense counsel provides notice of intent to call such an expert, *see* Fed. R. Crim. P. 16(b)(1)(C), the government will file a separate motion *in limine* seeking to exclude this testimony.

704 ("[A]n expert witness must not state an opinion about whether the defendant did or did not

have a mental state or condition that constitutes an element of . . . a defense").

  C. <u>Webster Responded With Greater Force Than Necessary for Self-Protection.</u>

  Even if it was objectively reasonable for Webster to respond with some force to Officer

N.R., any claim of self-defense still fails because Webster responded with greater force than

necessary to protect himself. *See Waters*, 896 F.3d at 570 (self-defense not applicable "if [the

defendant] and his co-conspirators used excessive force to repel Hargrove's attack"). In response

to Officer N.R. pushing his face away with an open palm, Webster swung a metal flagpole at

Officer N.R. After Officer N.R. retreated a few feet, Webster physically charged at Officer N.R.

and tackled him to the ground. This occurred notwithstanding the fact that Webster had a

reasonable alternative: he could have simply retreated from the police barricade back into the mob.

  In short, Webster had a clear pathway to avoid further engagement after Officer N.R.

pushed him. Webster instead did the opposite: he swung a dangerous object, rushed at the officer,

and tackled him to the ground. This response was so forceful and violent that another rioter

intervened to prevent Webster from further attacking Officer N.R. Webster's disproportionate

escalation provides yet another basis to preclude any self-defense invocation to the Section 111

assault charge.

  For each of these reasons, any self-defense assertion fails as a matter of law in this case.

Webster therefore should be precluded from presenting evidence or testimony regarding self-

defense, and from referencing or suggesting self-defense in statements to the jury.

## II. Webster Cannot, as a Matter of Law, Advance any Other Affirmative Defense.

  For these same reasons, Webster will be unable to present a valid defense of necessity,

justification, or duress. The affirmative defenses of necessity, justification, and duress are not

available where there was a "reasonable, legal alternative to violating the law, a chance both to

refuse to do the criminal act and also to avoid the threatened harm." *Bailey*, 444 U.S. at 410.  Here, Webster could have avoided any potential threatened harm by avoiding the restricted area of the U.S. Capitol.  He instead deliberately entered that area, approached a police barricade, and antagonized the officers.  Moreover, Webster had a reasonable, legal alternative after Officer N.R. pushed him: he could have retreated.  Webster instead did the opposite and physically attacked: first with a flagpole, and then by rushing and tackling the officer.  Accordingly, Webster cannot legally invoke these affirmative defenses and should be precluded from arguing them to the jury.

## CONCLUSION

For the reasons set forth above, the United States respectfully moves the Court to preclude Webster from raising the affirmative defenses of self-defense, necessity, justification, and duress at trial.  In the alternative, the United States respectfully moves this Court to require Webster to make a pre-trial proffer of facts that would permit the Court to decide whether he is entitled as a matter of law to assert any of these affirmative defenses.  If the Court defers its ruling until the evidence is presented at trial, the United States respectfully moves this Court to preclude Webster from raising any affirmative defenses in his opening statement.

Dated: March 14, 2022

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:        */s/ Hava Mirell*
HAVA MIRELL
Assistant United States Attorney, Detailee
United States Attorney's Office
District of Columbia
CA Bar No. 311098
555 4th Street, N.W.
Washington, D.C. 20530
(213) 894-0717
Hava.Mirell@usdoj.gov

_____/s/ Katherine Nielsen_
KATHERINE NIELSEN
Trial Attorney, Detailee
United States Attorney's Office
District of Columbia
D.C. Bar No. 491879
555 4th Street, N.W.
Washington, D.C. 20530
(202) 355-5736
Katherine.Nielsen@usdoj.gov

_____/s/ Brian P. Kelly_
BRIAN P. KELLY
Assistant United States Attorney
United States Attorney's Office
District of Columbia
D.C. Bar No. 983689
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7503
Brian.Kelly3@usdoj.gov