# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> v. ) <br> ) <br> THOMAS WEBSTER, ) <br> ) <br> Defendant. ) <br> ) | Criminal No. 21-cr-208 (APM) <br><br> **DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO LIMIT CROSS-EXAMINATION OF SECRET SERVICE AGENCY WITNESSES** |

Defendant, Thomas Webster, through his counsel, files this opposition to the Government's Motion in Limine to Limit Cross-Examination of Secret Service Agency Witnesses.

Mr. Webster is charged with allegedly obstructing, impeding, and interfering with, or attempting to obstruct, impede, or interfere with, law enforcement officers during the breach of the United States Capitol on January 6, 2021 in violation of 18 U.S.C. § 231(a)(3). ECF No. 39. Further, Mr. Webster is charged with violating 18 U.S.C. § 1752(a)(1), (2), & (4) for allegedly knowingly entering or remaining in a restricted building or grounds without lawful authority; with intent to impede or disrupt the orderly conduct of Government business and official functions, engaging in disorderly or disruptive conduct in, or within proximity of, any restricted building or grounds, when such conduct does in fact impede or disrupt Government business and official functions; and engaging in any act of physical violence against any person or property in a restricted building or grounds without lawful authority, all while using or carrying a metal flagpole. *Id.* This statute defines "restricted buildings or grounds" to include any building or

grounds temporarily visited by a person being protected by the Secret Service. 18 U.S.C. § 1752(c)(1)(B).

The individual(s) the Government claims was being protected by the Secret Service that would fulfill this particular element of the aforestated statute with which Mr. Webster is being charged for violating was then-Vice President Mike Pence. The Government contends that "at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol." ECF No. 56, p. 2.

The Government has not denied that Vice President Pence and his immediate family members left the Capitol building at 2:26p.m. through subterranean tunnels into an underground garage. *U.S. v. Griffin*, 1:21-cr-00092-TNM, ECF No. 73, p. 1. Meanwhile, the underlying encounter between Mr. Webster and Officer N.R. giving rise to all the charges currently pending against Mr. Webster began, according to Officer N.R.'s own BWC footage, at 2:28:28p.m.



*Figure 1 – Beginning of Defendant's Altercation with Officer N.R. as Seen in Public Source Video Synchronized with Officer N.R.'s BWC Footage with BWC Timestamp of 2:28:28p.m.*



*Figure 2 – Enhancement of Figure 1 Timestamp of Officer N.R.'s BWC Footage Showing Time of 2:28:28p.m.*

As such, the factual representations of the Government pertaining to a definition, and thus a required element of the charges against Mr. Webster, codified under 18 U.S.C. § 1752(c)(1)(B) do not square with the facts of this case. This Court should not permit the Government, as it is trying to do here, to shield individuals from cross-examination pursuant to a Motion in Limine in order to prevent the jury from hearing exculpatory evidence.

Aside from this dispositive fact, the Government's instant Motion should be denied on legal grounds. According to the charges, Mr. Webster is accused of knowingly entering or remaining in a restricted building or grounds without lawful authority; with intent to impede or disrupt the orderly conduct of Government business and official functions, engaged in disorderly or disruptive conduct in, or within proximity of, any restricted building or grounds, when such conduct does in fact impede or disrupt Government business and official functions; and/or engaged in any act of physical violence against any person or property in a restricted building or grounds without lawful authority, all while using or carrying a metal flagpole. All of these charges contain the crucial term "restricted building or grounds," which includes any building or grounds temporarily visited by a person being protected by the Secret Service, namely then-Vice President Mike Pence and his immediate family members. 18 U.S.C. § 1752(c)(1)(B).

The Government proposes that no questions be asked of Secret Service members regarding then-Vice President Pence's presence on the Capitol Grounds at the time Mr. Webster's alleged misconduct occurred - - a requisite element of the charges. ECF No. 56, p. 2.

The rules of evidence cited by the Government in its Motion (Fed. R. Evid. 401, 403, & 611(b)) do not permit the foreclosure of cross-examination of a government witness as to an element of the offense Mr. Webster alleged to have committed. Rather, these rules, together with the Confrontation Clause, secure defendant's unequivocal right to cross-examine any such witness.

In the context of a nearly identical motion in *U.S. v. Griffin*, 1:21-cr-00092-TNM, the Hon. Trevor N. McFadden, U.S.D.J. stated that, because "[w]hether the Vice President was present on the Capitol grounds is an essential question in Griffin's prosecution, …his Confrontation Clause interest in cross-examining the Government's witness on that point is at its zenith." *U.S. v. Griffin*, 1:21-cr-00092-TNM, ECF No. 92, p. 4 (Mem. Order, Mar. 18, 2022). Mr. Webster's right to cross-examine Secret Service Agency witnesses regarding this identical point presses hard on the same Constitutional concerns.

Generally, Confrontation Clause issues "fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985). The latter of these two categories, the one applicable to the instant Motion, is governed by the Supreme Court's decision in *Davis v. Alaska*, 415 U.S. 308, 315 (1974). *Fensterer*, 474 U.S. at 18.

In *Davis*, "the Court recognized that Confrontation Clause questions will arise [when restrictions are placed on the scope of cross-examination] because such restrictions may 'effectively…emasculate the right of cross-examination itself." *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)); *Davis*, 415 U.S. at 315 ("[T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-

examination."). The *Davis* Court vacated a conviction after the defendant was denied the opportunity to cross-examine a prosecution witness on the subject of the witness's probationary status as a juvenile delinquent to show possible bias. *Davis*, 415 U.S. at 309. The *Davis* Court found that the government's "policy interest in protecting the confidentiality of [the witness's record][could not] require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.* at 320. Thus, the precedent in *Davis* bolsters Judge McFadden's decision that cross-examination of the Secret Service agent is Mr. Webster's Constitutional right that should not be violated as the Government urges.

The Government's reasoning for its instant Motion - - that national security interests trump defendant's Constitutional rights - - was explicitly rejected in the precedential case of *U.S. v. Foster*, 986 F.2d 541 (D.C. Cir. 1993). In *Foster*, the defendant was on trial for possession of crack cocaine with intent to distribute and for committing the offense within 1,000 feet of a school. *Id.* at 542. In order to prove the school proximity element of the crime charged to the defendant, the government called as a witness a U.S. Park Police Officer who testified that he observed the defendant from his elevated observation post, and the defendant sought cross-examination of that officer regarding the location of the observation post. *Id.* The government objected to this line of cross-examination by asserting that revealing the observation post's location would vitiate the ability to use the post to prevent future crime in that same area, thus damaging a legitimate and significant government interest. *Id.* The district court agreed with the government's position and barred defense counsel from cross-examining the Park Police Officer regarding the location of the observation post in order to protect that government interest.[1]

---

[1] In *Foster*, the District Court considered and agreed with the government's argument regarding the divulgence of the observation post's location because the government invoked a specific evidentiary privilege – the "observation post privilege." In the instant case, the government invokes no privilege - - presumably because no applicable

The D.C. Circuit vacated the defendant Foster's conviction. The D.C. Circuit found that the defendant's interest in eliciting information "relevant and helpful to the defense" outweighed the prejudicial value of that information to the government's interest in preventing future crime via the same observation post. *Id.* at 541. The *Foster* D.C. Circuit Court found that the government could not have established its case that the defendant had committed the offense within 1,000 feet of a school, and that the defendant could not effectively challenge the officer's testimony regarding the location of the post and how that related to the school-proximity element of the offense without cross-examination of the officer about that specific fact. "The more important the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendment, to cross examine the witness." *Id.* at 543 (citing *Davis*, 415 U.S. at 319). "The right of the defense to engage in such lines of inquiry is at the heart of our system of criminal justice." *Id.* at 544. *See, also, Bueno v. U.S.*, 796 A.2d 37, 38-39 (D.C. Cir. 2002).

The parallels between *Foster* and the instant case are inextricable. Here, the Government states that it will call a witness from the United States Secret Service to testify that the area Mr. Webster entered was "restricted" under 18 U.S.C. § 1752(c)(1)(B) because Vice President Mike Pence and his two immediate family members were present at the time Mr. Webster was there. ECF No. 56, p. 2. As with the government's witness in *Foster*, this Secret Service Agent's testimony is necessary to the government's case because the issue such testimony regards is whether the Capitol grounds were statutorily "restricted grounds" because Vice President Pence and his family members were "temporarily visiting" the Capitol grounds when Mr. Webster was present. *Foster*, 986 F.2d at 543; 18 U.S.C. § 1752(c)(1)(B). Therefore, the scope of direct

---

privilege exists - - and instead relies upon the Federal Rules of Evidence 401, 403, & 611(b), which provide no support for its position as shown already in these papers.

examination - - and crucially of cross-examination - - encompasses the very subject matter the government attempts in its instant Motion to preclude, namely "information related to the location within the Capitol or its grounds to which the Vice President and his family, or their motorcade, were taken once the riot began on January 6, 2021." ECF No. 56, p. 2.

Unlike in *Foster*, the Government raises no evidentiary privilege in its instant Motion that would preclude the cross-examination of the Secret Service Agent regarding this specific subject matter. The Government simply states that this information is "sensitive" and "implicates…by extension, national security." ECF No. 56, p. 2. In support of this position, the Government cites to two cases in *United States v. Balistreri* and *United States v. Mohammed*. ECF No. 56, pp. 3, 6. Both these citations are distinguishable from the instant matter for two axiomatic reasons.

First, the Government does not represent that the "sensitive information" regarding whether Mr. Webster committed a crime is classified. It therefore has no basis for arguing for preclusion of testimony under the Classified Information Procedures Act (CIPA), which contains a statutory mechanism allowing courts to exclude relevant evidence in certain limited circumstances. 18 U.S.C. App. III. The lack of this ability to invoke CIPA distinguishes the instant case from *United States v. Mohammed*, which it cites for the purported principle that the Court may preclude cross-examination on a subject on the ground that it "could compromise national security." ECF No. 56, p. 6 (citing *U.S. v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005)(concerning CIPA and classified information, not "broader national security concerns" in unclassified material).

Further, in *Mohammed*, the court did not preclude cross-examination on the subject at issue because the information was classified; instead, it precluded cross-examination because the information did not relate to the subject matter of the case nor did it bear upon the potential bias

of a government witness. *Mohammed*, 410 F. Supp. 2d at 916. To the contrary, the subject matter sought to be precluded from cross-examination here bears directly and unquestionably upon one of the elements of the crimes with which Mr. Webster is charged, causing the instant matter to parallel *Foster, supra*, and not *Mohammed*.

Second, the Government's citation to *Balistreri* is inapposite here because the *Balistreri* Court precluded unclassified "sensitive information" from being subject to cross-examination because the subject matter in that case "did not pertain to the charges in the case." *United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). Again, the subject matter here speaks to an element of the charges alleged against Mr. Webster, rendering it expressly pertinent to his defense, causing the instant matter to parallel *Foster* and *Bueno, supra*, and not *Balistreri*.

The Government's remaining arguments are even more inapposite. The Government cites to *Delaware v. Fensterer* for the proposition that the "Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" ECF No. 56, pp. 3-4 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Despite the *Fensterer* Court having stated this in its opinion, the trial court in that case "did not limit the scope or nature of defense counsel's cross-examination in any way." *Fensterer*, 474 U.S. at 19. The opinion makes no reference to the preclusion of cross-examination material whatsoever, and certainly does not preclude cross-examination regarding information directly related to one of the elements of the charges against the defendant as was granted by the D.C. Circuit Court in *Foster* and is also in existence here.

The Government also cites to *Delaware v. Van Arsdall*, 475 U.S. 673 (1986) for the point that "permissible reasons for limiting cross-examination include preventing harassment,

prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning." ECF No. 56, p. 3. Strangely, the Government cites *Van Arsdall* when the Court's opinion there actually bolsters defendant Webster's opposition herein. In *Van Arsdall*, the trial court "prohibited *all* inquiry" into the subject matter on which the defendant sought cross-examination of a government witness. *Van Arsdall*, 475 U.S. at 679 (italics in original). Due to this, the Supreme Court found that defendant's Constitutional rights under the Confrontation Clause had been violated. *Id*. In other words, by citing *Van Arsdall*, the Government is showing this Court that the very request it makes in its instant Motion to preclude cross-examination equates to a violation of Mr. Webster's Constitutional rights under the Confrontation Clause.

The Government also supports Mr. Webster's opposition herein via its citation to *United States v. Stamp*, 458 F.2d 759 (D.C. Cir. 1971). In *Stamp*, while the appellate court found no error in the trial court's decision not to allow the defense to cross-examine a government witness "with respect to matters only relative to an affirmative defense" not adequately presented, the appellate court also found that it was "without question that appellants had a right to cross-examine the [government witnesses] concerning the...[criminal] transactions listed in the indictment[.][I]f we were to find that the trial judge in fact denied them this right, we would be duty-bound to reverse the convictions." *Stamp*, 458 F.2d at 772. Here, the subject matter on which the government seeks to preclude cross-examination does not relate to an affirmative defense, but instead concerns an essential element of the offenses charged against Mr. Webster pursuant to 18 U.S.C. § 1752(c)(1)(B). Thus, according to *Stamp*, this Court's preclusion of cross-examination of government witnesses regarding the very crimes alleged against Mr. Webster would not only be improper, but would constitute reversible error. *Stamp*, 458 F.2d at 772.

The government's remaining citations have no relevance to the issue present in the instant Motion. In *United States v. Lin*, the D.C. Circuit upheld the trial court's limitation on cross-examination because defense counsel refused to answer the court's reasonable demand for a proffer to support questioning concerning the government witness's "shady businesses." *U.S. v. Lin*, 101 F.3d 760, 780 (D.C. Cir. 1996). This denial of cross-examination was based on defense counsel's inability to provide any relevance for such a line of questioning, and the subject matter had nothing to do with an element of the offense as it does here and as was permitted in *Foster, supra*. The Government's citation to *United States v. Sampol*, 636 F.2d 621, 663-64 (D.C. Cir. 1980) is distinguishable for the same reason as *Lin* - - the defendants there sought to cross-examine a government witness regarding subject matter other than the elements of the crimes at issue. *Sampol*, 636 F.2d at 657. The appellate court found this subject matter to be too tangential to the crime at issue, and the defense also failed to proffer a reasonable factual foundation for that line of inquiry. *Id.* at 658.

In sum, there is no basis in the Federal Rules of Evidence, the United States Constitution, or in case precedent that would endorse the extreme request presented by the Government in its instant Motion. This matter parallels *Foster* and *Bueno, supra*, permitting cross-examination regarding information materially relevant to the elements of the crimes being alleged against the defendant. Further, this exact issue was already decided by this Court in *U.S. v. Griffin*, 1:21-cr-00092-TNM, in which the Hon. Trevor N. McFadden, U.S.D.J. stated that, because "[w]hether the Vice President was present on the Capitol grounds is an essential question in Griffin's prosecution, …his Confrontation Clause interest in cross-examining the Government's witness on that point is at its zenith." *U.S. v. Griffin*, 1:21-cr-00092-TNM, ECF No. 92, p. 4 (Mem. Order, Mar. 18, 2022). Mr. Webster's right to cross-examine Secret Service Agency witnesses

regarding this identical point is precisely at the same "zenith" here, and the Government's instant Motion to preclude him from being able to do so should be denied.

Turning to the Government's request for an *in camera* and *ex parte* proceeding to determine the evidence's admissibility, granting such a request would result in reversible error. The Government has not represented that the information at issue is classified. Thus, even if an *in camera* hearing were appropriate to determine whether the information at issue may be excluded from trial, an *ex parte* hearing without the presence of defense counsel would be grossly inappropriate.

*Ex parte* proceedings "are antithetical to the very concept of a [] court reaching impartial decisions through formal adjudication." *Portland Audubon Society v. Endangered Species Comm.*, 984 F.2d 1534, 1543 (9th Cir. 1993). As the D.C. Circuit has stated:

> "We think it a mockery of justice to even suggest that judges or other decisionmakers may be properly approached on the merits of a case during the pendency of an adjudication. Administrative and judicial adjudications are viable only so long as the integrity of the decisionmaking process remains inviolate. There would be no way to protect the sanctity of the adjudicatory process if we were to condone direct attempts to influence decisionmakers through ex parte contacts."

*Professional Air Traffic Controllers Org. v. Federal Labor Relations Auth.*, 685 F.2d 547, 570 (D.C. Cir. 1982).

*Ex parte* proceedings may occur only in "the most extraordinary circumstances." *Abrouezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986). Such circumstances almost always involve classified information, which is not at issue here. *Id.* at 1060. Outside that context, the "extraordinary circumstances" that would permit what is ordinarily a "mockery of justice" are strictly limited to where "documents sought by a party enjoy a privilege against discovery," "to prevent frustration of a statutory purpose to limit access to Government papers," or "to resolve

fears of intimidation of a witness." *Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.2d 958, 967 (D.C. Cir. 2016). The sole situation in which the D.C. Circuit has found those exceptions satisfied was "intelligence materials generated in the midst of a geopolitical conflict." *Id.* at 968. Even in this singular, extreme example, the D.C. Circuit did not make clear that the materials were unclassified in *Gilmore*.

In the instant matter, the Government points to no evidentiary privilege, conflicting statutory purpose, or witness intimidation fear that would warrant an *ex parte* proceeding - - presumably because such circumstances do not exist. Instead, by citing *Gilmore*, the Government appears to compare Vice President Pence's location at particular times on January 6, 2021 to "intelligence materials generated in the midst of a geopolitical conflict." Such a comparison is disingenuous. Moreover, this argument's absurdity is enhanced by indications that Vice President Pence and his staff volunteered photographs of his time in a Capitol underground garage to a journalist who was writing a book on the events of January 6, 2021[2], that Vice President Pence's whereabouts were provided to multiple reporters and at different points in time[3], and that the locations of the underground Capitol garages are available publicly on the website of the Architect of the Capitol.[4] In this context, the Court should balance defendant's interest in disclosure against the Government's interests in continued secrecy - - which has been waived by the Vice President's prior public disclosures - - and rule in accordance with "the fundamental requirements of fairness." *Roviaro v. United States*, 353 U.S. 53, 60 (1957).

---

[2] *Mike Pence Hid in "Loading Dock" in Underground Parking Garage During Jan. 6 Riot*, Newsweek, Nov. 9, 2021, https://www.newsweek.com/mike-pence-january-6-riot-loading-dock-underground-parking-garage-1

[3] *"I Alone Can Fix It" Book Excerpt: The Inside Story of Trump's Defiance and Inaction on Jan. 6*, Washington Post, July 15, 2021, https://www.washingtonpost.com/politics/2021/07/15/jan-6-i-alone-can-fix-it-book-excerpt

[4] Senate Fountain, Architect of the Capitol, https://www.aoc.gov/explore-capitol-campus/art/senate-fountain

There is no authority permitting an *in camera* hearing to be held *ex parte*, and any such procedure would constitute a violation of defendant's due process rights. *See Gilmore*, 843 F.2d at 967. Therefore, even if this Court decides that an *in camera* review of the evidence is somehow necessary, it should not be held *ex parte*. For the reasons stated, the Government's Motion in Limine to Limit Cross-Examination of Secret Service Agency Witnesses should be denied.

Dated: March 25, 2022

Respectfully submitted,

James E. Monroe, Esq.
Dupee & Monroe, P.C.
Attorneys for Defendant Thomas Webster
211 Main Street, P.O. Box 470
Goshen, New York 10924
(845) 294-8900
Fax: (845) 294-3619
jim@dupeemonroelaw.com

CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to: Hava Mirell, Assistant United States Attorney, Katherine Nielsen, Assistant United States Attorney and Brian Kelly, Assistant United States Attorney.

JAMES E. MONROE, ESQ.