UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-208 (APM) |
| v. : | |
| : | |
| THOMAS WEBSTER, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 29(c)

On May 2, 2022, following over three days of witness testimony and evidence, the jury returned a guilty verdict on all six counts. In so doing, the jury found—beyond any reasonable doubt—that defendant Thomas Webster violently assaulted Metropolitan Police Department ("MPD") Officer Noah Rathbun with a deadly or dangerous weapon—namely, a metal flagpole—outside the U.S. Capitol Building on January 6, 2021. The Court should not disturb the jury's guilty verdicts.

I.  BACKGROUND

On June 6, 2022, the defendant filed a motion for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c). ECF No. 92 ("Motion" or "Mot."). The Rule 29(c) motion challenges only the defendant's convictions on Counts One, Three, Four, and Five of the Second Superseding Indictment, which all relate to the defendant's use of a deadly or dangerous weapon while committing other unlawful acts. Specifically, Count One charges the defendant with assaulting, resisting, or impeding certain officers using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b). ECF No. 76. Counts Three, Four, and Five charge the

defendant with committing several unlawful acts on restricted Capitol grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(1), (a)(2), (a)(4), and (b)(1)(A). *Id.*

In his Motion, the defendant argues that the government failed to prove beyond a reasonable doubt that the flagpole he used to strike Officer Rathbun had the "potential . . . to produce death or bodily injury." Mot. at 4. The defendant further contends that the government failed to prove that he "used a deadly or dangerous weapon in any way other than in self-defense." *Id.* at 6. This latter argument is premised on the defendant's persistent claim—rejected unanimously by the jury—that he acted in self-defense when he assaulted Officer Rathbun. All of the defendant's arguments are meritless, and the defendant's Motion should be denied.

## II. LEGAL STANDARD

Rule 29 permits a defendant to renew a motion for a judgment of acquittal after a guilty verdict has been rendered. Fed. R. Crim. P. 29(c). A conviction in a criminal trial should be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court must determine whether, "viewing the evidence most favorably to the government and according the government the benefit of all legitimate inferences therefrom, a reasonable juror *must necessarily* have had a reasonable doubt as to the defendant['s] guilt." *United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983) (emphasis in original). "Thus a judgment of acquittal is appropriate only when there is *no* evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt." *Id.* at 438 (emphasis in original); *see also United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009).

In deciding a Rule 29(c) motion, a court must view the prosecution's evidence in the light most favorable to the government, "drawing no distinction between direct and circumstantial

evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Battle*, 613 F.3d 258, 264 (D.C. Cir. 2010) (quoting *United States v. Andrews*, 532 F.3d 900, 903 n.1 (D.C. Cir. 2008)). Further, a court "must presume that the jury has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell,* 702 F.2d 262, 264 (D.C. Cir. 1983). The "jury is entitled to draw a vast range of reasonable inferences from [the] evidence, but may not base a verdict on mere speculation." *United States v. Long,* 905 F.2d 1572, 1576 (D.C. Cir. 1990).

## III.   ARGUMENT

The defendant's Motion reads like his closing argument, focusing exclusively on his self-serving testimony without addressing any of the government's overwhelming evidence to the contrary. But the defendant's burden here is not to convince a jury of his defense and find him not guilty; rather, he must convince this Court that no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. He has not come close to meeting that burden. To the contrary, the evidence readily supports the jury's guilty verdicts on each of the challenged counts.

### A.   Ample Evidence Supports the Jury's Finding that the Defendant Used the Metal Flagpole in a Manner that Could Cause Serious Bodily Injury or Death

At the conclusion of trial, this Court properly instructed the jury about the definition of a "deadly or dangerous weapon" for purposes of Counts One, Three, Four, and Five. As the Court stated, "[a]n object is a deadly or dangerous weapon if it is capable of causing serious bodily injury or death to another person and the defendant used it in that manner. In determining whether the object is a deadly or dangerous weapon, you may consider both physical capabilities of the object used and the manner in which the object is used." 4/29/22 P.M. Tr. at 25:6-11.

The evidence amply supports the jury's finding that the defendant used the metal flagpole in a manner that could have caused serious bodily injury or death. First and foremost, Exhibit 204, which contains video footage of the assault from Officer Rathbun's body-worn camera ("BWC"), shows the defendant striking the metal flagpole with enough force to break the flagpole in half. Indeed, a loud clang can be heard each time the defendant strikes the bike rack with his flagpole. Officer Rathbun is also clearly at risk of bodily injury and death from the defendant's flagpole, as he is seen standing mere inches away from where the flagpole makes contact with the bike rack. On this evidence alone, the jury could have reasonably concluded that the defendant used his metal flagpole as a deadly or dangerous weapon.

In addition to this BWC footage, the jury heard from three witnesses—including the defendant—who testified that a metal flagpole can be (and, in fact, was used by the defendant) as a dangerous or deadly weapon. United States Capitol Police ("USCP") Officer Joanna Burger, who was dispatched to reinforce the police line on the Lower West Terrace, testified that rioters were "using everything" and "[a]nything that the[y] had their hands on" as weapons, including "[m]etal pipes, wood, [and] water bottles." 4/26/22 P.M. Tr. at 115:7, 110:12-13. Officer Rathbun testified that he was particularly concerned about the defendant's flagpole because it could be used "[a]s a weapon." 4/27/22 A.M. Tr. at 26:12. Officer Rathbun also described how the defendant wielded the flagpole in a dangerous and deadly manner:

> He had taken the metal pole. He had used it as a weapon, and, you know, held it back and struck towards me several times and officers standing next to me in a chopping motion. He had hit the fence, you could hear it hit the fence. That was the loud metal sound that you heard. And then our perimeter had to take a step back.

*Id.* at 33:14-20.  When asked whether the defendant tried to hit him with the flagpole, Officer Rathbun confirmed, "Yes, he did," and further explained that the defendant was swinging the flagpole "pretty hard."  *Id.* at 33:22-25.

The defendant himself acknowledged that his flagpole could have been perceived as a threat by law enforcement.  In fact, the defendant repeatedly stressed that he was acutely aware of his positioning of the flagpole, precisely because he knew Officer Rathbun would view his flagpole as a potential weapon:

> I knew I had the flagpole and I was thinking about making sure it didn't – you know – I was trying to keep it perpendicular perfectly to the ground.  I knew [the Officer would] be concerned about it.  And I tried to hold it on the very bottom.  I mean, if you—you know, I kind of like . . . how can I hold this without making it look like I'm presenting a danger to him. . . . I tried to, you know, make sure he understood that.

4/28/22 A.M. Tr. at 132:9-19; *see also* 4/28/22 P.M. Tr. at 7:23-25–8:1-9 ("I was very aware of my positioning with that flag pole . . . [b]ecause I just didn't want to make it seem threatening to [Officer Rathbun] in any way.").  The defendant also testified that he could have done things with the flagpole "to really fend [Officer Rathbun] off and do some crazy stuff to him," thereby conceding that the flagpole could be used to cause serious bodily injury.  4/28/22 A.M. Tr. at 144:3-5.  Finally, the defendant confirmed that he struck the flagpole against the bike rack with enough force to cause the flagpole to break in half.  *See* 4/28/22 (P.M.) Tr. at 9:18 (defendant explaining that his flagpole came apart "[a]fter I [struck] the bike rack").

While the defendant was reluctant to admit that he wielded the flagpole in a dangerous and deadly manner, he was quick to claim that the flagpole, in others' hands, could be used as a deadly or dangerous weapon.  For example, when describing why he felt threatened by Officer Rathbun, the defendant explained that Officer Rathbun "ha[d] my pole," and "I was concerned about what

5

he was going to do with that pole." 4/28/22 A.M. Tr. at 147:22-25.  Indeed, the defendant claimed that he was so scared about what Officer Rathbun could do with the flagpole that he needed to tackle Officer Rathbun to the ground: "Officer Rathbun has my flag pole now, and at that point, there's a sharp edge, because it broke, and he's standing in the on-guard position, and I'm like, okay, you know, I have to protect myself. . . . So as we make contact, he kind of like goes to the ground." 4/28/22 P.M. Tr. at 11:12-18.  As this testimony shows, the defendant knew that he had rendered the flagpole even more dangerous by breaking it in half and causing it to have a sharpened edge.  He also knew that a metal flagpole—especially one with a sharpened edge—was capable of causing serious bodily injury or death.  As the government explained in its closing argument at trial, if the metal flagpole was a potential weapon in Officer Rathbun's hands, then it was also a weapon in the defendant's hands.  *See* 4/29/22 P.M. Tr. At 55:22-25 ("It was concerning to [the defendant] that Officer Rathbun had the metal pole.  So he certainly thought it could be used as a weapon, didn't he?  Just not when it was in his hands.").

In sum, jurors using their common sense could reasonably infer from the testimony and video evidence presented at trial that when the defendant struck the metal flagpole with enough force to break it in half, he used the flagpole in a manner that was capable of inflicting serious bodily injury or death.[1]

---

[1] The defendant's Motion incorrectly suggests that the government was required to prove that the defendant "possessed an intent to 'use' the flagpole/flag as a dangerous and/or deadly weapon." Mot. at 5.  But as the Court correctly instructed the jury, the government was required to prove only that in assaulting, resisting, opposing, impeding, and interfering with Officer Rathbun, "the defendant used a deadly or dangerous weapon." 4/29/22 P.M. Tr. at 21:21-22.  As explained above, the government presented more than sufficient evidence about the dangerous capabilities of a metal flagpole and specifically about how, by striking the flagpole at the bike rack directly in front of Officer Rathbun, the defendant used the flagpole in a manner likely to cause death or serious bodily injury.

> **B.** **Ample Evidence Supports the Jury's Finding that the Defendant Did Not Act in Self-Defense When He Assaulted Officer Rathbun**

The defendant seeks acquittal on Counts One, Three, Four, and Five on the basis that his use of the metal flagpole occurred only while he was acting in self-defense. ECF No. 92 at 5. At the close of evidence at trial, this Court correctly instructed the jury about the elements of self-defense:

> Every person has the right to use a reasonable amount of force in self-defense if: [(1)] he has a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of excessive force[;] [a]nd [(2)] uses no more force than was reasonably necessary in the circumstances. A person who was the initial aggressor does not act in self-defense.

4/29/22 P.M. Tr. at 37:7-14.

There was ample evidence at trial to support the jury's finding that the defendant was not acting in self-defense when he used the flagpole as a deadly or dangerous weapon. As a preliminary matter, the jury could have reasonably concluded that the defendant was not entitled to claim self-defense because he was the initial aggressor in his altercation with Officer Rathbun. Exhibit 204—the footage from Officer Rathbun's BWC—shows that the defendant initiated the confrontation with Officer Rathbun and was the first to get physical by twice pushing the bike rack into Officer Rathbun. Exhibit 207—an open-source video that provides a different view of the altercation—confirms that the defendant repeatedly pushed the bike rack into Officer Rathbun before Officer Rathbun stuck out an open hand to create distance between himself and the defendant and incidentally made contact with the side of the defendant's face.

In addition to this unrebutted video evidence, Officer Rathbun testified about how the defendant was the initial aggressor. When asked why he was trying to push the defendant away with an open hand, Officer Rathbun explained that he was "trying to maintain that perimeter, that

7

section of the bike rack. And [the defendant] had already at this point pushed the bike rack into me twice, and I knew there was really nothing that was going to prevent everyone from flowing through it at that point." 4/27/22 A.M. Tr. at 32:6-11; *see generally id.* at 30:12–32:11.

There are at least three additional reasons why a rational jury could have rejected the defendant's claim of self-defense. First, the jury could have found that Officer Rathbun did not use excessive force against the defendant. Notwithstanding the defense's repeated attempts to mischaracterize the evidence, Exhibit 204.4—a screenshot from Officer Rathbun's BWC—clearly shows that Officer Rathbun never "punched" the defendant. To the contrary, Officer Rathbun consistently used an open hand to create distance between himself and the defendant. *See* 4/27/22 A.M. Tr. at 32:12-25–33:1-7 (Officer Rathbun testifying that he used an open hand when he made contact with the side of the defendant's face and denying that he ever punched or used a closed fist against the defendant). Thus, a rational jury could have concluded that the defendant had no right to use any force, much less a deadly or dangerous weapon, against Officer Rathbun in response to Officer Rathbun's defensive actions.

Second, the jury could reasonably have found that the defendant did not actually or reasonably believe that his use of force was necessary to defend himself against Officer Rathbun. The jury was not required to credit the defendant's self-serving claims that he—a former Marine and retired New York City Police Department Officer—believed that he was in imminent danger of serious bodily harm from Officer Rathbun. In reaching this conclusion, the jury could have considered, among other things, the difference in stature and demeanor between Officer Rathbun and the defendant; the fact that Officer Rathbun did not use any weapons to protect himself from the defendant; the fact that officers on the Lower West Terrace were vastly outnumbered by rioters on January 6; and the fact that Officer Rathbun was standing on the other side of a bike rack when

8

the defendant chose to attack him with the flagpole. *See United States v. Bell*, 795 F.3d 88, 112 (D.C. Cir. 2015) ("[T]he carriage, behavior, bearing, manner and appearance of a witness—in short, his 'demeanor'—is part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined to them as we are. They may, and indeed they should, take into consideration the whole nexus of sense impressions which they get from a witness.") (quoting *Dyer v. MacDougall*, 201 F.2d 265, 268-69 (2d Cir. 1952)); *see also* 4/27/22 A.M. Tr. at 33:1-7 (Officer Rathbun confirming that he did not use a closed fist or any equipment, such as a baton or crowd control spray, against the defendant); Exh. 212 (time lapse of USCP surveillance footage showing how rioters outnumbered police officers at the Lower West Terrace on January 6, 2021). It would also have been reasonable for the jury to conclude, based on the evidence, that the defendant could have retreated from the police line instead of using force against Officer Rathbun. *See, e.g.*, Exh. 217 (USCP surveillance video showing the defendant's ability to maneuver himself through the crowd and away from the police line). The fact that the defendant chose to bull rush and tackle Officer Rathbun to the ground, even after Officer Rathbun had retreated backward from the police line, could also have impacted the jury's reasonable decision to reject the defendant's claim of self-defense. *See* Exhs. 204 & 207.

Finally, the jury could reasonably have found that the defendant used more force against Officer Rathbun than was reasonably necessary under the circumstances. As explained above, Officer Rathbun did not use any weapons against the defendant, and a jury could reasonably conclude that the defendant's use of a metal flagpole to defend against Officer Rathbun's open-hand incidental contact constituted excessive force.

### C. The Defendant's Argument that he Momentarily Possessed the Metal Flagpole with the Sharpened Edge is Inapposite and Unsupported by the Evidence.

For the first time in his Motion, the defendant tries to assert a new affirmative defense of innocent or momentary possession. Mot. at 5. Not only is this defense unsupported by the evidence, but it is not a cognizable defense to any of the charges of which the defendant stands convicted.

The D.C. Circuit has recognized an innocent possession defense only in the context of a weapons possession charge. *United States v. Mason*, 233 F.3d 619 (D.C. Cir. 2000). The innocent possession defense is "necessarily narrow." *Id.* at 624. In order to invoke this defense, "[t]he record must reveal that: (1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory—*i.e.*, in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible." *Id.* "When these requirements are met, possession is 'excused and justified as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement.'" *Id.* (quoting *Hines v. United States*, 326 A.2d 247, 248 (D.C. 1974)).

Even if innocent possession could apply in this case, the record does not support a finding that the defendant's flagpole was attained innocently and that he took adequate measures to rid himself of the flagpole as promptly as reasonably possible. To the contrary, the defendant deliberately packed his flagpole for his trip to Washington, D.C. and carried it for hours before approaching Officer Rathbun at the Lower West Terrace. The defendant then used the flagpole to strike repeatedly at Officer Rathbun before Officer Rathbun was able to wrest the flagpole out from the defendant's grip. Such actions do not demonstrate an intent to immediately turn the flagpole over to authorities, nor do they demonstrate "an affirmative effort to aid and enhance

social policy underlying law enforcement." *Hines*, 326 A.2d at 248. Thus, there was no justification for the defendant's possession of his weapon.

## IV. Conclusion

The Court should deny the defendant's motion for judgment of acquittal.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Hava Mirell*
HAVA MIRELL
Assistant United States Attorney, Detailee
United States Attorney's Office
District of Columbia
CA Bar No. 311098
555 4th Street, N.W.
Washington, D.C. 20530
(213) 894-0717
Hava.Mirell@usdoj.gov

    */s/ Brian P. Kelly*
BRIAN P. KELLY
Assistant United States Attorney
United States Attorney's Office
District of Columbia
D.C. Bar No. 983689
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7503
Brian.Kelly3@usdoj.gov