UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Criminal No. 21-cr-208 (APM) |
| | ) | |
| **THOMAS WEBSTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.**

A jury heard three days of witness testimony and saw extensive video evidence relating to the actions of Defendant Thomas Webster at the U.S. Capitol Building on January 6, 2021. The jury convicted him on each of the six counts with which he was charged. Four of those counts—Counts One, Three, Four, and Five—charged Defendant with committing the underlying offense "using a deadly or dangerous weapon." *See* Second Superseding Indictment, ECF No. 76. The "deadly or dangerous weapon" in question was a metal flagpole. Defendant now asks the court to vacate the portions of the jury's verdicts finding him guilty of using the metal flagpole as a "deadly or dangerous weapon." Def.'s Mot. for J. of Acquittal Pursuant to Fed. R. Crim. Proc. 29(c), ECF No. 92 [hereinafter Def.'s Mot.]. His motion is denied.

**II.**

A court's review of a jury's finding of guilt is "highly circumscribed," *United States v. Battle*, 613 F.3d 258, 264 (D.C. Cir. 2010), and "highly deferential," *United States v. Williams*, 836 F.3d 1, 6 (D.C. Cir. 2016). The court must accept the jury's verdict if "any rational trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. *See Battle*,

613 F.3d at 264.  In making that determination, the court must "view the evidence in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact."  *Williams*, 836 F.3d at 6 (internal quotation marks omitted) (citing *Battle*, 613 F.3d at 264).

### III.

Defendant advances three main arguments.  First, he contends that no rational trier of fact could have found that he used the metal flagpole as a "deadly or dangerous weapon."  Def.'s Mot. at 4–5.  Second, he asserts that the evidence failed to show beyond a reasonable doubt that he did not use the flagpole in self-defense.  *Id.* at 2–4.  And, third, he offers a defense that he did not present to the jury for consideration:  that he only innocently or "momentarily possessed" the flagpole.  *Id.* at 5.  None of these arguments is persuasive.

### A.

If an object is not inherently deadly, to qualify as a "deadly or dangerous weapon," it "must be capable of causing serious bodily injury or death to another person *and* the defendant must use it that manner."  *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002).  There was ample evidence from which the jury could have concluded that Defendant used the metal flagpole as a "deadly or dangerous weapon."

The jury could have so found based on the body-worn camera footage of Officer Noah Rathbun alone.  *See* Gov't Trial Ex. 204.  That footage showed Defendant approaching a line of police officers who were attempting to hold people at bay from further approaching the U.S. Capitol Building.  The officers were separated from the crowd by metal bike racks.  Holding a metal flagpole, to which a flag was attached at first, Defendant angrily confronted the officers,

including Officer Rathbun, screaming obscenities, questioning their patriotism, and challenging them to "take [their] shit off," referring presumably to the protective equipment the police were wearing. Defendant then pushed hard twice against the bike rack. When Officer Rathbun reached across the line to create space between himself and Defendant, he incidentally touched the right side of Defendant's face.[1] Defendant then wielded the flagpole as a weapon, chopping it down repeatedly onto the portion of the bike rack immediately in front of where Officer Rathbun was standing and had placed his hands with enough force to break the pole in half. That video evidence, by itself, was enough to establish that Defendant used the flagpole in a manner that was, at least, "capable of causing serious bodily injury."

Officer Rathbun's testimony provided further evidence for that finding, as did Defendant's own testimony. Officer Rathbun testified that Defendant's striking of the bike rack caused a "loud metal sound" and required "our perimeter to step back." Trial Tr. (draft), Apr. 27, 2022 (morning), at 26. He perceived Defendant as having tried to hit him with the flagpole. *Id.* at 33. As for Defendant, during his testimony, he recognized that the flagpole could be used as a weapon. He said that, when he first approached the police line, he held the flagpole upright so as not to appear as a threat to the officers. Trial Tr. (draft), Apr. 28, 2022 (morning), at 132. Moments later, during the altercation, Officer Rathbun was able to take from Defendant the half of the flagpole that remained in his hands. Defendant testified that he perceived Officer Rathbun's possession of the pole as a threat to him. He said, "at that point, there's a sharp edge, because it broke, and he's standing in the on-guard position, and I'm like okay, you know, I have to protect myself." Trial Tr. (draft), Apr. 28, 2022 (afternoon), at 11. Defendant felt so endangered by Officer Rathbun's possession of the half-broken pole, he charged Officer Rathbun, tackled him to the ground, and

---

[1] A reasonable jury could have concluded based on all the evidence that the contact was an incidental, open-hand touching, and not a purposeful, close-fisted punch, as Defendant argued.

3

attempted to remove his gas mask. If Defendant believed the metal pole was capable of being used as a "deadly or dangerous weapon," he cannot be heard to complain when the jury concluded the same.

**B.**

Next, Defendant maintains that the evidence failed to demonstrate beyond a reasonable doubt that he did not use the metal flagpole in self-defense. Def.'s Mot. at 4–5. The jury, as Defendant concedes, was "properly instructed regarding self-defense" with respect to each of the counts he now contests. *Id.* at 3. Defendant's assertion that there was a failure of proof on that element (i.e., negating self-defense) rests on the very version of events he presented at trial through his own testimony, and which the jury evidently rejected. The court's assessment of the evidence at this stage is in the light most favorable to the government, not the defendant.

As the government's opposition establishes, the jury could have rejected Defendant's self-defense claim for any number of reasons. It could have concluded that Defendant was the first aggressor; that Defendant's belief that he needed to use force to defend himself was not reasonable; or that Defendant used more force than reasonably necessary in the circumstances. Gov't Opp'n to Def's Mot., ECF No. 97, at 8–9. The jury reasonably could have discredited Defendant's testimony, and it is not for the court to disturb that determination.

**C.**

Finally, Defendant advances a defense he did not at trial: that he innocently or momentarily possessed the flagpole and therefore did not use it as a dangerous weapon. Def.'s Mot. at 5. But the evidence did not support such a defense, even if he had asserted it. A successful innocent possession defense requires showing that (1) the object "was attained innocently," (2) it was "held with no illicit purpose, and (3) its possession was "transitory," that is, the defendant "took adequate

4

measures to rid himself of possession of the [object] as promptly as reasonably possible." *United States v. Mason*, 233 F.3d 619, 624 (D.C. Cir. 2000), as amended (Jan. 10, 2001). The trial evidence supported not one of these elements.

### III.

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal is denied.

Date: August 1, 2022

Amit P. Mehta
United States District Court Judge